MDR

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Vaughn Gwen,<br>  Plaintiff,<br>v.<br>Leon Cattolico, et al.,<br>  Defendants. | No.   CV-24-08023-PCT-JAT (JFM)<br><br>**ORDER** |

Self-represented Plaintiff Gerald Vaughn Gwen is confined in the Arizona State Prison-Kingman and is proceeding in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. After the Court dismissed Plaintiff's Complaint because Plaintiff failed to state a claim and gave Plaintiff an opportunity to file an amended complaint that cured the deficiencies the Court identified, Plaintiff filed a First Amended Complaint. The Court dismissed the First Amended Complaint for failure to state a claim and gave Plaintiff an opportunity to file a second amended complaint that cured the deficiencies the Court identified.

Pending before the Court is Plaintiff's Second Amended Complaint (Doc. 12). The Court will dismiss the Second Amended Complaint and this action.

**I.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff

has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines that a pleading could be cured by the allegation of other facts, a self-represented litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

. . . .

## II. Second Amended Complaint

In his one-count Second Amended Complaint,[1] Plaintiff sues Defendants Dr. Leon Cattolico and Health Services Administrator Becky Payne. Plaintiff raises a claim under the Eighth Amendment regarding his medical care and seeks declaratory relief and monetary damages.

Plaintiff contends Defendants were deliberately indifferent to his "serious illness and injury" and "disregarded a known or obvious risk." (Doc. 12 at 3.)[2] He claims Defendants failed to follow Centers for Disease Control (CDC) guidelines "concerning COVID-19 detection and treatment" and were "deliberately indifferent to the dangers posed by a failure to act on their knowledge of a serious risk of harm." (*Id*.) He contends he was "exposed to uncertain and excessive risk" and suffered headaches, a nosebleed, weight loss, and "chronic neck and shoulder pain easily avoidable" because Defendants failed "to exercise sound professional judgment in determining and treating Plaintiff's symptoms," which the CDC defined as "requiring immediate emergency treatment." (*Id.* at 4).

Specifically, Plaintiff contends he was confined in the Yavapai County Detention Center from April 2017 through February 2021. (*Id*. at 5.) On November 12, 2020, he submitted a health needs request informing medical providers he was experiencing "flu symptoms." (*Id*.) Plaintiff claims Defendant Cattolico assigned a nurse to "evaluate [Plaintiff's] virus symptoms" and designated "[t]he incident" as "high priority" and "an infectious disease." (*Id*.)

The following day, Plaintiff complained to a nurse that he was not receiving "timely or adequate medical care to address his serious flu symptoms." (*Id*.) According to Plaintiff,

---

[1] Plaintiff's Second Amended Complaint contains minor misspellings and misplaced or omitted punctuation. The Court, when quoting the Second Amended Complaint, has corrected these without specifically noting them.

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

medical records reflect Defendant Cattolico "was informed." (*Id*.) Plaintiff made a similar complaint on November 16, 2020. (*Id*. at 6.)

On November 18, 2020, Plaintiff complained to nurses that he was not receiving adequate medical care regarding his flu symptoms, had not been seen by a doctor, was feeling worse, was nauseated, and was unable to eat. (*Id*.) Plaintiff made a similar complaint to a detention officer the following day. (*Id*.) According to Plaintiff, "records indicate" Defendant Cattolico was informed the same day. (*Id*.)

Plaintiff alleges he complained to a nurse on November 20, 2020, that he was being given medications unrelated to his flu symptoms and "not known to treat [the] coronavirus," his grievances about "treatment choices" had gone unanswered, and he had to force himself to eat. (*Id*. at 6.) He claims this information was provided to Defendant Payne. (*Id*.) Plaintiff also asserts a nurse informed Defendant Payne of Plaintiff's flu symptoms and the "lack of proper response," but Defendant Payne was deliberately indifferent and "took no action." (*Id*. at 7.)

Plaintiff saw Defendant Cattolico that same day, but Defendant Cattolico allegedly failed to "take action" or "address, responsibly, symptoms," despite his awareness "of the risk posed by inattention or dereliction." (*Id*.) Plaintiff asserts that on November 21, 2020, the medical staff provided "inmates of 'O' dorm" a CDC alert listing "symptoms to watch for requiring immediate medical attention." (*Id.*)

Plaintiff alleges Defendants failed to follow "all CDC guidelines" and this "placed him at a greater risk." (*Id*.) He claims he was not tested to determine if he was infected with COVID-19, despite Defendants' knowledge that at least seven inmates had tested positive in November and that one had been transported to the hospital for "serious complications related to COVID-19." (*Id*.)

Plaintiff also claims he was x-rayed on December 4, 2020, for a neck injury. (*Id*. at 8.) Plaintiff alleges Defendant Cattolico was provided with the radiologist's report but was "deliberately indifferent to Plaintiff's serious medical need" because he "intentionally disregarded the risk of harm by not discussing radiology report's findings with Plaintiff or

discussing a "treatment plan." (*Id.*) Plaintiff contends he did not receive any treatment for his "serious medical injury." (*Id.*)

Plaintiff alleges he filed a November 4, 2020 grievance regarding his "injury and illness, which implicated Defendants' deliberate indifference to his serious medical needs." (*Id.*) He claims that although the grievance was assigned to Defendant Payne the same day, she did not respond to it and "intentionally deleted" it 11 months later. (*Id.* at 8-9).

Plaintiff also asserts he filed a November 25, 2020 grievance regarding the lack of a response to his prior grievances and Defendant Cattolico's "failure to take responsible action or responsibly address his symptoms or injury." (*Id.* at 9.) According to Plaintiff, this grievance was also assigned to Defendant Payne, but she never responded to it. (*Id.*) In addition, Plaintiff contends he filed a January 22, 2021 grievance informing Defendants that his spine condition was worsening, he was experiencing spasms, his pain was severe, and he was unable to put on a shirt without severe pain. (*Id.*) He asserts the grievance was assigned to Defendant Payne, but she did not respond to it and "intentionally deleted" it in December 2021. (*Id.*) Plaintiff alleges Defendant Payne is responsible for resolving medical grievances but "maliciously disregarded" Plaintiff's grievances when she "knowingly, with specific intent, dismissed [them]." (*Id.*) He contends this constituted deliberate indifference. (*Id.*)

Plaintiff asserts that when he was transferred to the Arizona Department of Corrections, Rehabilitation & Reentry (ADC) custody in March 2021, he tested positive for the antibody indicating a prior COVID-19 infection. (*Id.* at 7-8.) Plaintiff also contends that while in ADC custody, he was "twice diagnosed with cervical spine convexity and or mild torticollis of the cervical spine requiring treatment." (*Id.* at 8.)

**III.   Failure to State a Claim**

Although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal

- 5 -

interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Although Plaintiff was confined in the Yavapai County Detention Center during the relevant timeframe, he was a convicted inmate.[3] Thus, the Court will evaluate his claim under the Eighth Amendment.

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the

---

[3] *See* https://corrections.az.gov/inmate-data-search (search by ADC Number for "332970" and click on "Inmate Info" hyperlink, which reflects Plaintiff was admitted to the custody of the Arizona Department of Corrections on October 23, 2018)) (last visited Feb. 19, 2025); *see also* https://apps.azcourts.gov/publicaccess/minutes.aspx (search "Court" for "Yavapai County Superior" and "Case Number" for "CR 201580451"; click on hyperlink for October 23, 2018 Minute Entry, which reflects Plaintiff was sentenced on October 23, 2018, to concurrent prison sentences, the longest of which was five years) (last visited Feb. 19, 2025).

defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff alleges Defendant Cattolico was aware of Plaintiff's flu symptoms and a COVID-19 outbreak at the facility but was "deliberately indifferent to the dangers posed by a failure to act" and failed to act reasonably to address Plaintiff's symptoms or "exercise

sound professional judgment."  However, Plaintiff's allegations suggest Defendant Cattolico was kept abreast of Plaintiff's symptoms, which were reported to him on November 12, 13, and 19, 2020, and saw Plaintiff eight days after he first reported his symptoms.  Although Defendant Cattolico may not have ordered "immediate emergency treatment" or some unspecified treatment Plaintiff believes he should have received, this does not indicate Defendant Cattolico acted with deliberate indifference.  *See Sanchez*, 891 F.2d at 242.  Plaintiff's allegations do not support that Defendant Cattolico acted with deliberate indifference to a serious medical need.

Plaintiff claims Defendant Cattolico "intentionally disregarded the risk of harm" by not discussing the radiologist's report with Plaintiff or discussing a treatment plan.  However, Plaintiff does not identify any actual harm he suffered from Defendant Cattolico's failure to discuss the report or a treatment plan.  Indeed, it is not even clear what treatment Plaintiff' believes was necessary.

Likewise, although Plaintiff alleges Defendant Payne failed to respond to his complaints and grievances, he alleges no facts to support a reasonable inference that her conduct was anything more than negligent or that it caused Plaintiff any injury.  Moreover, the Court notes Plaintiff most recent confinement in the Yavapai County Detention Center allegedly ended in February 2021.  Thus, when Defendant Payne purportedly deleted Plaintiff's grievances in December 2021, Plaintiff had not been at the facility for more than nine months.

Plaintiff's allegations are insufficient to state a medical care claim against either Defendant.  The Court will dismiss Plaintiff's Second Amended Complaint.

**IV.    Dismissal without Leave to Amend**

 "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint.  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Repeated failure to cure deficiencies is

one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1) The Second Amended Complaint (Doc. 12) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(2) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3) The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

Dated this 26th day of February, 2025.

James A. Teilborg
Senior United States District Judge